| | |
|---|---|
| **LEXINGTON INSURANCE COMPANY;** ) <br> **NATIONAL UNION FIRE INSURANCE** ) <br> **COMPANY OF PITTSBURGH,** ) <br> **PENNSYLVANIA; GREAT LAKES** ) <br> **REINSURANCE (UK) PLC; ACE** ) <br> **AMERICAN INSURANCE COMPANY;** ) <br> **XL INSURANCE AMERICA, INC.;** ) <br> **IRONSHORE SPECIALTY INSURANCE** ) <br> **COMPANY; TALBOT SYNDICATE** ) <br> **1183; TORUS SPECIALTY INSURANCE** ) <br> **COMPANY; NAVIGATORS** ) <br> **SYNDICATE 1221 (f/k/a MILLENNIUM** ) <br> **SYNDICATE 1221); PEMBROKE** ) <br> **SYNDICATE 4000; SJC 2003/CATLIN;** ) <br> **BRIT INSURANCE, SYNDICATE 2987;** ) <br> **CHAUCER MARINE, SYNDICATE 1084;** ) <br> **BERKSHIRE HATHAWAY** ) <br> **INTERNATIONAL INSURANCE; ARCH** ) <br> **INSURANCE COMPANY; AND** ) <br> **LANDMARK AMERICAN INSURANCE** ) <br> **COMPANY,** ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> **LION OIL COMPANY,** ) <br> ) <br>     **Defendant.** ) | **No.: 3:13-cv-01054** <br><br> **JUDGE ALETA TRAUGER** <br><br> **MAGISTRATE JUDGE KNOWLES** |

**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF**

COMES NOW Plaintiffs LEXINGTON INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA; GREAT LAKES REINSURANCE (UK) PLC; ACE AMERICAN INSURANCE COMPANY; XL INSURANCE AMERICA, INC.; IRONSHORE SPECIALTY INSURANCE COMPANY; TALBOT SYNDICATE 1183; TORUS SPECIALTY INSURANCE COMPANY;

NAVIGATORS SYNDICATE 1221 (F/K/A MILLENNIUM SYNDICATE 1221); PEMBROKE SYNDICATE 4000; SJC 2003/CATLIN; BRIT INSURANCE, SYNDICATE 2987; CHAUCER MARINE, SYNDICATE 1084; BERKSHIRE HATHAWAY INTERNATIONAL INSURANCE LIMITED; ARCH INSURANCE COMPANY and LANDMARK AMERICAN INSURANCE COMPANY ("Insurers"), and for their Complaint for Declaratory Relief against LION OIL COMPANY, states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for a Declaration that there is no coverage for Defendant's claimed contingent time element losses under property insurance policies issued by the Insurers.

## PARTIES

2. Plaintiffs are Underwriters and Insurers (collectively the "Insurers") that provided insurance to Defendant Lion Oil Company and entered into contracts of insurance designated by various policy numbers in effect from May 1, 2011 to May 1, 2012 (the "Policies"). The Policies have varying terms and conditions, deductibles and sublimits but the relevant wording of the exclusions and coverages are identical.

3. Plaintiff Lexington Insurance Company issued policy number 035826015. It is an insurance company incorporated under the laws of Delaware, with its principal place of business in Massachusetts.

4. Plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania issued policy number 61628120. It is an insurance company incorporated under the laws of Pennsylvania, with its principal place of business in New York. The National Union Fire Insurance Company of Pittsburgh, Pennsylvania policy includes the relevant wording common to all the Underwriters' and Insurers' Policies except as noted in this Complaint and is attached as Exhibit A.

5. Plaintiff Great Lakes Reinsurance (UK) PLC, issued policy number B0509EI066011. It is a foreign business entity organized under the laws of the United Kingdom, with its principal place of business in London, England.

6. Plaintiff ACE American Insurance Company issued policy number EPR NO 51 03 34 4. It is an insurance company incorporated in and has its principal place of business in Pennsylvania.

7. Plaintiff XL Insurance America, Inc. issued policy number US00027204PR11A. It is an insurance company incorporated under the laws of Delaware, with its principal place of business in Connecticut.

8. Plaintiff Ironshore Specialty Insurance Company issued policy number 000270201. It is an insurance company incorporated in Arizona, with its principal place of business in New York.

9. Plaintiff Talbot Syndicate 1183 subscribes to policy number AJT088339C11. Talbot Syndicate 1183 is an unincorporated association backed by Talbot 2002 Underwriting Capital Ltd., which is a foreign business entity organized in the United Kingdom with its principal place of business in London, England.

10. Plaintiff Torus Specialty Insurance Company issued policy number 15996A111AON. It is an insurance company incorporated under the laws of Delaware, with its principal place of business in New Jersey.

11. Plaintiff Navigators Syndicate 1221 (formerly known as Millennium Syndicate 1221) and Plaintiff Pembroke Syndicate 4000 subscribe to policy number 11 NSRO 1338-01. Navigators Syndicate 1221 is comprised of one corporate member, Navigators Corporate Underwriters Ltd., which is foreign business entity organized under the laws of the United Kingdom with its principal place of business in the United Kingdom. Pembroke Syndicate 4000 is comprised of one corporate member, Ironshore Capital Ltd., which is foreign business entity organized under the laws of the United Kingdom with its principal place of business in the United Kingdom.

12. Plaintiff SJC 2003/Catlin subscribes to policy number B0509EI066011. It is backed by Catlin Syndicate, Ltd., whose parent company is Catlin Group, Ltd., which is organized in Bermuda and has its principal place of business in the United Kingdom.

13. Plaintiff Brit Insurance, Syndicate 2987 (Brit Syndicates, Ltd.), subscribes to policy number B0509EI066011. Brit UW Ltd., is the sole shareholder of Brit Insurance, Syndicate 2987 (Brit Syndicates, Ltd.), which is a foreign business entity incorporated in and with its principal place of business in the United Kingdom.

14. Plaintiff Chaucer Marine, Syndicate 1084, subscribes to policy number B0509EI066011, is a member of Hannover Insurance Group, Inc., which is incorporated under the laws of Delaware and has its principal place of business in the United Kingdom. Hannover Insurance Group has its principal place of business in Worcester, Massachusetts.

15. Plaintiff Berkshire Hathaway International Insurance Limited subscribes to policy numbers B0509EI066011 and B0509EI046911. It is incorporated in and has its principal place of business in the United Kingdom.

16. Plaintiff Arch Insurance Company issued policy number HHP0038715101. It is an insurance company incorporated under the laws of Missouri, with its principal place of business in New York.

17. Plaintiff Landmark American Insurance Company issued policy number LHD372952. It is an insurance company incorporated under the laws of Oklahoma, with its principal place of business in Georgia.

18. Defendant Lion Oil Company ("Lion Oil") is a company incorporated under the laws of Arkansas with its principal place of business in Tennessee.

## JURISDICTION AND VENUE

19. The Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

20. Venue is proper in this District under 28 U.S.C. § 1391(a) (1) as the defendant resides within this judicial district.

## FACTUAL ALLEGATIONS

21. Lion Oil owns and operates an oil refinery near El Dorado, Arkansas (the "El Dorado Refinery").

22. The Policies provide coverage to Lion Oil for all risks of direct physical loss or damage to real and personal property and provide coverage for Contingent Business Interruption loss subject to the terms, conditions, and exclusions in the Policies.

23. Prior to April 28, 2012, the El Dorado Refinery received crude oil from the ExxonMobil Pipeline Company ("EMPCo") North Pipeline System that originates in Louisiana and transports crude oil from the Gulf of Mexico to refineries in Louisiana, Texas, and Arkansas.

24. On April 28, 2012 a section of the EMPCo North Pipeline near Torbert, Louisiana ruptured, interrupting the flow of oil to the El Dorado Refinery.

25. After the rupture, the Department of Transportation Pipeline and Hazardous Material Safety Administration ("PHMSA") issued a Corrective Action Order ("CAO") dated May 8, 2012.

26. The CAO noted that "the preliminary visual inspection by OPS at the scene indicated the presence of a 17-foot long failure in the longitudinal seam at the 12 O'clock position" of a failed section of pipe.

27. The ruptured section was removed and replaced by May 22, 2012.

28. EMPCo determined the cause of the rupture of the Pipeline was a weld defect present from the time of fabrication that was not detected by EMPCo's inspections of the Pipeline.

29. The CAO required, *inter alia*, that EMPCo submit and obtain approval of "an integrity verification remedial work plan." The CAO required that the restart plan include:

> A. Integration of the results of the metallurgical analysis performed pursuant to Item 4 above and the failure analysis required by Item 5 above with all relevant pipeline system data, including all historical repair information, construction, operating, maintenance, testing, metallurgical analysis or other third-party consultation information, and assessment data. Data-gathering activities must include a review

of the failure history (including both in-service and pressure test failures) of the North System pipelines and development of a written report containing all available information regarding locations, dates, and causes of leaks and failures;

B. The performance of additional field testing, inspections, and valuations to determine whether and to what extent the conditions associated with the Failure, or any other integrity-threatening conditions are present elsewhere on the Affected Pipeline. Additional in-line inspections that can reliably detect any defects similar to those that caused or were a contributing factor to the Failure and confirmatory hydrostatic testing must be considered in the plan. Include a detailed description of the criteria to be used for the evaluation and prioritization of any integrity threats and anomalies that are identified;

C. A detailed description of the inspection and repair criteria to be used in the evaluation and prioritization of identified integrity threats. This is to include a description of how any defects are to be graded and a schedule for repairs or replacement;

D. Provisions for continuing long-term period testing and integrity verification measures, considering the results of the analyses, inspections, and corrective measures undertaken pursuant to this Order, to ensure the ongoing safe operation of the Affected Pipeline;

E. A proposed schedule for completion of the actions required by paragraphs A-D of this Item.

(Corrective Action Order, pp.-6).

30. After EMPCo replaced the ruptured section it decided to inspect and test an additional 200 miles of the Pipeline to determine if integrity threatening conditions existed in sections of the Pipeline that were not damaged in the April 28, 2012 incident.

31. In order to verify the integrity of the ruptured portion of the Pipeline, EMPCo elected to perform a hydrostatic test (using water) at more than 80% of the failure pressure. EMPCo elected to use the hydrostatic tests to:

A. Verify integrity of the pipeline;

B. Comply with one of the CAO Item #6 integrity verification requirements through confirmatory hydrostatic testing;

C. Reestablish the original MOP; and

D. Maximize crude delivery capability to meet customer needs. Raising the pressure from the current restriction (80% of failure pressure) to the proposed (80% of reestablished MOP) allows operation of the mainline pump at Boyce Station. Running the mainline pump increases the system throughput by as much as 20%, supporting shippers and refining customers who have been impacted by the event.

32. As a result EMPCO's actions unrelated to the repair of the damaged section, including the decision to hydrostatically test undamaged sections of the Pipeline, the Pipeline was not restarted until after October 2012 and the El Dorado Refinery did not begin receiving crude oil until January 2013.

33. Lion Oil submitted a Contingent Business Interruption claim of $44,100,711 and an extra expense claim of $36,402,789 for the losses it allegedly sustained during the time the El Dorado Refinery did not receive crude oil from the EMPCo Pipeline. (the "Claim").

34. On September 27, 2013 the Insurers denied the Claim.

35. Lion Oil does not agree with the Insurers' denial of the Claim.

## COUNT 1

## DECLARATORY RELIEF

Plaintiffs incorporate and re-allege Paragraphs 1 through 35 by reference as if fully set forth herein.

36. The Policies include a faulty workmanship exclusion that provides:

> This policy does not insure:
>
> \* \* \*
>
> **B.** against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship.

37. The Policies include an exclusion for wear and tear and latent defect, which provides:

This policy does not insure:

* * *

**D.** against ordinary wear and tear, gradual deterioration, dampness or dryness of atmosphere, changed in temperature, smog, shrinkage, evaporation, depletion, termites, moth, vermin, loss of weight, erosion, wet or dry rot, inherent vice, latent defect, rust or corrosion unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage

38. The Contingent Time Element coverage requires that direct physical damage to property causes the interruption of the delivery of goods and/or services from the direct supplier. The coverage grant provides:

(5) Time Element Extensions

(a) This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against, to:

* * *

(ii) Contingent Time Element: property that wholly or partially prevents any direct supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that wholly or partially prevents any direct receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the Policy Territory;

39. Based on the above cited provisions from the Policies, and for the following reasons, there is no coverage under the Policies for the Claim:

A. The cause of the rupture of the Pipeline was not a peril insured against by the Insurance Policies. The weld defect identified as the cause of the rupture by EMPCo is faulty material, faulty workmanship, and latent defect, which are excluded causes of loss. Contingent Time Element coverage is triggered only where the damage to the suppliers' property was caused by a covered peril.

B. The rupture and the interruption in the supply of crude oil to the El Dorado Refinery are not "ensuing losses" within the meaning of the exceptions to the exclusions. Damage to the property that is the

manifestation of faulty material or faulty workmanship is not loss resulting from the excluded peril. Similarly, damage to the defective property from the latent defect is not ensuing loss.

C. The Policies do not provide Contingent Extra Expense coverage.

D. The Service Interruption coverage does not apply to loss resulting from damage to a crude oil pipeline. The plain language of the provision shows the coverage is for loss resulting from damage to utilities that provide services needed to operate the refinery.

E. The interruption in the flow of oil beyond the replacement of the damaged section was not the result of physical damage to property, a required element of Contingent Time Element coverage.

40. The Claim is also not covered for other reasons.

41. Plaintiffs are entitled to a Declaration that the Policies do not provide coverage for the Claim.

## **PRAYER FOR RELIEF**

Wherefore, by reason of the foregoing, the Plaintiffs respectfully seek and request a Declaration by this Court that there is no coverage under the Policies for the Claim.

Respectfully submitted,

LEWIS, KING, KRIEG & WALDROP, P.C.

By: /s/ John R. Tarpley
John R. Tarpley, BPR No. 9661
jtarpley@lewisking.com
Bradford D. Telfeyan, BPR No. 24744
btelfeyan@lewisking.com
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219-8615
Telephone: (615) 259-1366
Facsimile: (615) 259-1390

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: /s/ William A. Webster
   William A. Webster, (*Pro Hac Vice* Pending)
   WAWebster@rkmc.com
   Amy M. Churan, (*Pro Hac Vice* Pending)
   AMChuran@rkmc.com
   Glenanne B. Kennedy, (*Pro Hac Vice* Pending)
   GBKennedy@rkmc.com
   2049 Century Park East, 34th Floor
   Los Angeles, CA 90067-3208
   Telephone: (310) 552-0130
   Facsimile: (310) 229-5800

Attorneys for Plaintiffs, Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pennsylvania; Great Lakes Reinsurance (UK) PLC; ACE American Insurance Company; XL Insurance America, Inc.; Ironshore Specialty Insurance Company; Talbot Syndicate 1183; Torus Specialty Insurance Company; Navigators Syncidate 1221 (f/k/a Millennium Syndicate 1221); Pembroke Syndicate 4000; SJC 2003/Catlin; Brit Insurance, Syndicate 2987; Chaucer Marine, Syndicate 1084; Berkshire Hathaway International Insurance Limited; Landmark American Insurance Company; Arch Insurance Company

## CERTIFICATE OF SERVICE

       I hereby certify that on this the 14th day of October, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

    Peter M. Gillon, Esq.
    Geoffrey J. Greeves, Esq.
    Vernon C. Thompson, Esq.
    Pillsbury Winthrop Shaw Pittman LLP
    2300 N Street NW
    Washington, DC  20037-1122

    H. Frederick Humbracht, Jr., Esq.
    Bradley Arant Boult Cummings, LLP
    1600 Division Street, Suite 700
    Post Office Box 340025
    Nashville, TN  37203-0025

    /s/ John R. Tarpley