UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 3:13-CV-1054 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| LION OIL COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The plaintiffs in this case are insurers and underwriters (collectively, "Insurers") of insurance policies ("Policies") under which Lion Oil Company ("Lion Oil") unsuccessfully attempted to recover money for losses sustained at Lion Oil's refinery in El Dorado, Arkansas (the "Refinery"). Shortly after the Insurers filed the instant declaratory judgment action against Lion Oil (hereinafter, "Tennessee Declaratory Judgment Action"), in which the Insurers seek a declaration that Lion Oil is not entitled to recover under the Policies, Lion Oil filed a parallel coercive action against the Insurers in the Western District of Arkansas (where the Refinery is located), alleging a breach of contract claim and demanding a declaratory judgment that the Insurers are obligated to cover Lion Oil's losses under the Policies. *See Lion Oil Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, Civil Action No. 1:13-CV-01071-SOH (W.D. Ark. filed Oct. 8, 2013) (hereinafter, "Arkansas Coercive Action").

Pending before the court are two motions concerning the appropriate disposition of this case in light of the later-filed Arkansas Coercive Action. The Insurers have filed a Motion to Enjoin Lion Oil (Docket No. 26), which asks the court to enjoin Lion Oil from pursuing the

1

Arkansas Coercive Action. In response to that motion, Lion Oil filed a Motion to Transfer under 28 U.S.C. § 1404(a) (Docket No. 32) and a Memorandum in opposition to the Motion to Enjoin and in support of the Motion to Transfer (Docket No. 33), to which the Insurers filed a Reply (Docket No. 48). The Insurers have also filed an unopposed Request for Judicial Notice (Docket No. 28), which asks the court to take notice of the Insurers' Motion to Dismiss in the Arkansas Coercive Action.

Essentially, the Insurers urge the court to prevent Lion Oil from pursuing the Arkansas Coercive Action, whereas Lion Oil urges the court to dismiss or stay the instant Tennessee Declaratory Judgment Action, or, in the alternative, to transfer the case the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a) for further proceedings. For the reasons stated herein, the Motion to Enjoin will be denied, the Request for Judicial Notice will be granted, the court will exercise its discretion to stay this case, and the Motion to Transfer will be denied as moot.

## **BACKGROUND**[1]

### I. **The Tennessee Declaratory Judgment Action and the Arkansas Coercive Action**

---

[1] Unless otherwise noted, the facts are drawn from (1) the allegations in the Complaint in this case; and (2) facts supported by the Declaration of Lori Caltagirone (Docket 32, Ex. 1) filed by Lion Oil in support of its Motion to Transfer. The Court notes that, with the exception of a copy of their Rule 12(b)(3) motion in the Arkansas Coercive Action (*i.e.*, a public record over which the court may take judicial notice), the Insurers have not filed any evidentiary materials in support of their Motion to Enjoin or in opposition to Lion Oil's Motion to Transfer.

In briefing the instant motions, each side has also made representations about certain facts outside the pleadings, without providing supporting evidence. For the most part, neither party has attempted to rebut the other side's factual representations in its responsive submission(s), neither party has argued that the court should disregard the other's representations for any procedural reason, and the parties appear to treat the representations as true. Therefore, although the court would not typically consider these facts in addressing the types of motions presented here, the court will identify and consider (as the parties have) the unrebutted factual representations in its analysis.

2

### A. The Parties

Lion Oil is an Arkansas corporation that has owned and operated an oil refinery in El Dorado, Arkansas since 1985. On April 29, 2011, Lion Oil moved its corporate headquarters from Arkansas to Tennessee, when Delek US Holdings, Inc. ("Delek") acquired the company. Following that transaction, both Lion Oil's headquarters and its principal of business are in Tennessee.

The Insurers provided insurance to Lion Oil and entered into contracts of insurance – the Policies – in effect from May 1, 2011 to May 1, 2012. None of the Insurers has a corporate headquarters or a principal place of business in Arkansas or Tennessee.[2] Although the Policies are not identical, the parties appear to agree, at least for purposes of the instant motions, that the relevant coverage and exclusion terms are the same. The parties also agree that two of the Policies contain Arkansas choice of law provisions and the remaining Policies contain no choice-of-law provision. Finally, the policies contain the following language related to "Service of Suit":

> It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance [] to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.
>
> Notwithstanding any provision elsewhere in this insurance [sic] relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District

---

[2]Collectively, the defendants are incorporated in, maintain principal places of business in, and/or are "backed" by companies in multiple sister-state and foreign jurisdictions, including Delaware, Massachusetts, New York, Pennsylvania, London (England), the United Kingdom, Arizona, New Jersey, Bermuda, Oklahoma, and Georgia.

3

> Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

(Compl., Ex. 1, at ¶ 47 [page 48 of docketed entry].)

### B. The Pipeline Incident and the Insurers' Denial of Lion Oil's Coverage Claim

The Refinery processes crude oil fed to it through a pipeline owned and operated by the ExxonMobil Pipeline Company ("EMPCo."), which transports crude oil from the Gulf of Mexico (the Louisiana coast) to refineries in Louisiana, Texas, and Arkansas. On or about April 28, 2012, the pipeline ruptured at a point near Torbert, Louisiana. In an effort to evaluate and remedy the rupture, EMPCo shut down the segment of the pipeline serving the Refinery, thereby interrupting the flow of oil to the Refinery. An initial visual inspection noted a 17-foot long seam failure in the line.

On May 8, 2012, the U.S. Department of Transportation Pipeline and Hazardous Materials Safety Administration ("PHMSA"), which is the regulatory entity responsible for pipeline safety, issued a Corrective Action Order ("CAO") to EMPCo relating to additional testing and remedial measures. The CAO required EMPCo to submit and obtain approval for an "integrity verification remedial work plan" that would include, *inter alia*, (1) a metallurgical analysis, failure analysis, and an integrated compilation of relevant pipeline system data; (2) field testing to assess whether conditions that caused the failure were present elsewhere in the pipeline, with respect to which EMPCo was required to "consider" hydrostatic testing; and (3) provisions for long-term testing and integrity verification measures.

The Insurers do not dispute that, on May 8, 2012, shortly following the pipeline incident, Lion Oil submitted a claim for its losses under the Policies.

4

EMPCo repaired and replaced the ruptured section of the pipeline by May 22, 2012. Following issuance of the CAO by the PHMSA, EMPCo chose to perform a hydrostatic test along 200 miles of pipeline that had not been damaged in the April 28, 2012 incident. The test was intended to verify the pipeline's integrity as required by the CAO and to restore (at least partially) the pressure of crude oil flow through the pipeline. According to the Insurers' Complaint in this case, EMPCo undertook the proposed measures (including hydrostatic testing) related to an undamaged section of the pipeline at an unspecified time between May 2012 and January 2013.[3] The flow of crude oil to the Refinery did not resume until early 2013.[4]

During the time period in which the Refinery did not receive crude oil from EMPCo's pipeline, Lion Oil suffered a significant business interruption and incurred expenses in an effort to quantify and mitigate its losses. According to the Caltagirone Declaration, several party witnesses in Arkansas have knowledge concerning these efforts at mitigation, including (1) Delek's Vice President of Operating services, who has information relating to the rearrangement of crude oil deals, (2) Paul Fisher, Lion Oil's Manager of Technical Services, who has information related to oil equipment expenses, and (3) Steve Thweatt, Lion Oil's Area Sales Manager for Asphalt Sales, who has information related to Lion Oil's asphalt operations and how

---

[3] Although the court need not consider it for purposes of the instant motions, the court notes that Lion Oil's Arkansas Coercive Action Complaint alleges that (1) in September 2012, EMPCo completed the referenced metallurgical testing and reported its results to the PHMSA, and (2) in October 2012, the PHMSA authorized EMPCo to restart the pipeline at a reduced operating capacity.

[4] The record is muddled as to when Lion Oil resumed receiving crude oil shipments through the pipeline. Although the Complaint alleges that the Refinery began receiving shipments in "January 2013," the Insurers have not disputed the representation in Lion Oil's briefing that the shipments in fact did not resume until "March 2013." (*See* Docket No. 33, Lion Oil Mem., at p. 3.) This inconsistency is not material to the instant motions.

they were impacted by the pipeline rupture. According to Caltagirone, "[a]ll of the pipeline and management personnel with specific knowledge of the El Dorado refinery and its losses are located in Arkansas." (*Id.* ¶ 6.) Caltagirone also avers that "a number of vendors and customers that Lion Oil contracted with to mitigate its losses" are also located in Arkansas, including (1) RailTran LLC, with whom Lion Oil entered into long-term contracts for the delivery of crude oil by rail in an effort to keep the refinery operational; (2) Blackstone Construction LLC, a customer/purchaser of discounted, off-spec asphalt; and (3) Normal Transport, Inc., a freight/transport service provider that assisted Lion Oil by hauling externally purchased asphalt and asphalt intermediaries back to the El Dorado market so that Lion Oil could fill certain customer orders. Caltagirone is not aware of any third-party "vendors or customers" that are located in Tennessee.

After the flow of oil resumed and (presumably) Lion Oil had completed its mitigation efforts, Lion Oil claimed to the Insurers that it had incurred approximately $44 million in lost earnings and approximately $36 million in extra expenses as a result of the pipeline shutdown.

On September 27, 2013, the Insurers denied Lion Oil's $80 million claim in its entirety.[5] On that same date – apparently just after denying Lion Oil's claim – the Insurers filed the instant lawsuit, in which they seek a declaratory judgment that Lion Oil's losses are not covered under the Policies. The Insurer's initial Complaint (Docket No. 1) named both Lion Oil and Delek as defendants, invoking diversity jurisdiction, notwithstanding the fact that Delek was a non-diverse Delaware corporation.

---

[5]The Insurers allege, *inter alia*, that Lion Oil's claim falls outside the scope of policy coverage and/or within one or more coverage exclusions, including exclusions for faulty workmanship, wear and tear, and latent defect. (*See* Compl. ¶¶ 38-43.)

On October 8, 2013 – eleven days later – Lion Oil filed the Arkansas Coercive Action in the Western District of Arkansas. In that lawsuit, which is based on the same underlying events as the instant case, Lion Oil asserts a claim for breach of contract by the Insurers and demands a declaratory judgment that the Insurers are liable under the Policies.[6]

On October 8, 2013, Lion Oil filed a Motion to Dismiss in this case under Fed. R. Civ. P. 12(b)(1), arguing (correctly) that the court lacked diversity jurisdiction over the case as alleged in the original Complaint. On October 14, 2013, as a matter of right under Rule 15(a)(1), the Insurers filed an Amended Complaint (Docket No. 16), which dropped Delek as a named defendant, thereby curing the jurisdictional deficiency. On October 29, 2013, the Insurers filed a Motion to Dismiss in the Arkansas Coercive Action, asking that court to dismiss the Arkansas Coercive Action under Rule 12(b)(3) in deference to the earlier-filed Tennessee Declaratory Judgment Action (*i.e.*, this case), pending this court's ruling on the instant Motion to Enjoin. As of the date of this opinion, the Insurer's Motion to Dismiss in the Arkansas Coercive Action remains pending.

## II. The Instant Motions

On October 25, 2013, the Insurers filed the instant Motion to Enjoin Lion Oil, which asks the court to enjoin Lion Oil from pursuing the Arkansas Coercive Action. The Insurers argue that, under the "first-to-file rule," the first-filed case should proceed and the later-filed case

---

[6]Although the underlying facts and legal dispute in the Arkansas Coercive Action are substantially the same as those presented here, the Complaint in that case contains more detailed allegations than the Insurers' Complaint here, including sections relating to Lion Oil's efforts to mitigate damages, additional coverage provisions in the Policies, the stated basis for the Insurers' denial of coverage under the Policies, and why those grounds were allegedly without merit under the relevant coverages and exclusions.

7

should not.  *See Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 F. App'x 433, 437 (6th Cir. 2001).  On November 8, 2013, Lion Oil filed a Motion to Change Venue under 28 U.S.C. § 1404(a).

In support of its motion and in opposition to the Motion to Enjoin, Lion Oil argues that the court should find that: (1) the first-to-file rule does not apply because (a) the district court in Arkansas had subject matter jurisdiction over the Arkansas Coercive Action before this court had subject matter jurisdiction over the Insurers' Tennessee Declaratory Judgment Action, or (b) the circumstances presented justify an exception to the first-to-file rule; and/or (2) even if the first-to-file rule applies, the court should transfer this case to the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a).

Notably, neither party has requested discovery with respect to either motion.

### III.    First-to-File Rule

#### A.    Standard for Application of the First-to-File Rule

"The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank.  The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should *generally* proceed to judgment."  *Zide*, 16 F. App'x at 437 (citation omitted) (emphasis added); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (citation and internal quotation marks omitted).  In determining whether the first-to-file rule warrants the invocation of the court's discretion to transfer or otherwise dispose of a case, the court may consider the following factors: "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake."

8

*SNMP Research, Inc. v Avaya, Inc.*, 2013 WL 474846, at *3 (E.D. Tenn. Feb. 7, 2013) (citing *NCR Corp. v. First Fin. Computer Serv., Inc.*, 492 F. Supp. 2d 864, 866 (S.D. Ohio 2007)); *see also Plating Res. Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903-904 (N.D. Ohio 1999).[7]

"[T]he first-filed rule is not a strict rule . . ." *Certified Restoration*, 511 F.3d at 551-52. Thus, "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands." *Id.* (quoting *Zide*, 16 F. App'x at 437). "Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Id.* Also, "[a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." *Zide*, 16 F. App'x at 437; *see also Zimmer Enterps., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 988 (S.D. Ohio 2007). Thus, "a suit brought purely in anticipation of a filing by the defendant in another forum should be dismissed." *Van Andel Inst. v. Thorne Research, Inc.*, 2012 WL 5511912, at *2 (W.D. Mich. Nov. 14, 2012) (quoting *Kmart Corp. v. Key Indus.*, 877 F. Supp. 1048, 1053 (E.D. Mich. 1994)).

Whether a transfer is warranted under § 1404(a) is a distinct inquiry from the court's application of the first-to-file rule. "Instead of convenience to the litigants, the value most cherished by the first-to-file doctrine is comity among the courts with cases containing substantially similar issues." *SNMP*, 2013 WL 474846 (quoting *NCR Corp.*, 492 F. Supp. 2d at

---

[7]A duplicative suit is one in which the issues "have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). "[T]he parties and issues need not be identical. Rather, the crucial inquiry is whether the parties and issues substantially overlap." *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005) (citations omitted). Here, the parties appear to agree that this lawsuit and the Arkansas Coercive Action – in which the parties are reversed – are duplicative and merit resolution in a single forum.

9

868). Thus, while the court may take into account factors such as convenience of the parties, the primary factor in deciding whether to transfer is the judiciary's interest in having the first-filed court determine all dispositive issues in the case." *Elite Physicians Servs., LLC v. Citicorp Payments Servs. Inc.*, 2007 WL 1100481, at *4 (E.D. Tenn. Apr. 11, 2007) (citing *Zide*, 16 F. App'x at 437). When a federal court is presented with a duplicative suit, it may exercise jurisdiction to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit. *Smith*, 129 F.3d at 361.

### B. Which Case Was the "First Filed"?

Lion Oil argues that the court should treat the Arkansas Coercive Action as the "first filed" case when conducting its analysis, because the Insurers did not cure the jurisdictional deficiency in this case until after Lion Oil filed the Arkansas Coercive Action, in which diversity jurisdiction was appropriate from the outset. Although the Sixth Circuit has not explicitly ruled on the precise circumstances presented here, the Sixth Circuit has found that, for purposes of the first-to-file rule, the initial date of filing generally controls because jurisdiction relates back. *See Barber-Greene Co. v. Blaw-Knox Co.*, 239 F.3d 774, 778 (6th Cir. 1957) (date of complaint in earlier-filed Ohio case controlled, even though Ohio court did not acquire personal jurisdiction until after later-filed case was filed and the named defendant in that later case was served); *Zide*, 16 F. App'x at 437 ("For purposes of the first-to-file chronology, the date that an original complaint is filed controls."); *see also Zimmer*, 478 F. Supp. 2d at 987-989 (where defendant in earlier-filed case was initially misidentified but effectively received notice of lawsuit, corrective amendment related back for purposes of first-to-file rule, even though amendment to name proper party occurred after later-filed case involving the same parties and issues was filed); *Geotag, Inc.*

10

*v. Fred's, Inc.*, 2013 WL 2181166, at *3 (W.D. Tenn. May 20, 2013) (filing date of original complaint controls).

Therefore, although Lion Oil is correct that subject matter jurisdiction in this case was lacking until the Insurers filed an Amended Complaint as a matter of right, the court finds that the curative jurisdictional amendment relates back to the original filing date for purposes of the first-to-file rule. Therefore, with respect to the "first-to-file" chronology, the court finds that this case was filed first.

### C. Which Party Bears the Burden of Persuasion?

The parties dispute which side has the burden of persuasion here. In a typical case, the first-filed rule favors the forum in which the first lawsuit was filed. However, the Sixth Circuit has held that this presumption generally is reversed in declaratory judgment actions:

> [T]he first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment . . . . Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, *a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor the substantive suit*.

*Certified Restoration*, 511 F.3d at 551-52 (emphasis added) (quoting *AmSouth Bank*, 386 F.3d at 791 n.8); *see also UAW v. Dana Corp.*, 1999 WL 33237054, at *6 (N.D. Ohio Dec. 6, 1999) (in applying the first-filed rule to a declaratory judgment action, "the real question for the court is not which action was commenced first but which will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict") (quoting Wright & Miller, FED. PRAC. & PROC. § 2758 [edition not specified in opinion]); *Clear!Blue, LLC v. Clear Blue, Inc.*, 521 F. Supp. 2d 612 (E.D. Mich. 2007) ("[C]oercive actions . . . should with few exceptions be given precedence over declaratory judgment actions, even when a declaratory

11

judgment action presenting similar parties and issues is filed first."). As explained in *AmSouth*:

> Courts take a dim view of plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum. Allowing declaratory judgment actions can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit. . . . [W]here a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum – a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act.

386 F.3d at 788.[8]

Applying this precedent, the court finds that the presumption favors deference to the Arkansas Coercive Action here, particularly where neither case has been litigated beyond its earliest stages – indeed, no party has filed an Answer in either case, and neither court has ruled on any significant motions. Therefore, the burden is on the Insurers, who filed this declaratory judgment action, to show why this court should not defer to the Arkansas Coercive Action.

### D. Disposition of the Motion to Enjoin

In determining how to dispose of a first-filed case, the court may consider factors such as extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping. *Certified Restoration*, 511 F.3d at 551-52. "[W]hether the forum chosen by the declaratory plaintiff is 'logical' can have only minimal value in determining whether procedural fencing has occurred. The question is not which party has chosen the better forum, but whether

---

[8]As the Sixth Circuit has also observed, under the Declaratory Judgment Act, a federal district court has discretion *not* to hear a declaratory judgment action, even where jurisdiction exists. *Zide*, 16 F. App'x at 437 ("The Declaratory Judgment Act empowers the district court to entertain certain actions, but does not compel it to exercise the jurisdiction thus granted to it. Discretion not to hear a declaratory judgment action, even where jurisdiction exists, is undisputed.") (citing, *inter alia*, 28 U.S.C. § 2201(a)).

the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first."
*AmSouth*, 386 F.3d at 789. Furthermore, although it is a distinct inquiry from the § 1404(a) factors, the court may consider which forum will best serve "the needs and interests of the parties" and provide a "comprehensive solution of the general conflict." *Int'l Union*, 1999 WL 33237054, at *3

The Insurers have not shown that the equitable factors favor application of the first-to-file rule here; to the contrary, consistent with the general presumption in favor of a coercive action, the equitable factors favor deference to the Arkansas Coercive Action. First, the record reflects precisely the type of "race-to-the-courthouse" gamesmanship that the first-filed rule and the Declaratory Judgment Act were not intended to promote. Here, after evaluating Lion Oil's claim for 16 months and apparently suggesting to Lion Oil that the parties might settle the then-pending claim, the Insurers denied the claim and filed this lawsuit on the same day. For all practical purposes, the Insurers denied the claim and filed this lawsuit simultaneously, depriving Lion Oil of the chance to make a meaningful response, let alone to threaten (or initiate) litigation. The record does not contain any indication that Lion Oil was preparing, or had threatened, to sue the Insurers for the claim denial, as opposed to, say, attempting to convince the Insurers to reconsider their decision and/or to negotiate a settlement before engaging in litigation over the matter. Under the circumstances, it is self-evident that the Insurers filed an anticipatory lawsuit and have engaged in procedural fencing to lock down a preferred forum by racing to the courthouse.[9]

---

[9]The forum provisions in the Policies do not undercut the court's analysis. In the Policies, the parties mutually consented to the jurisdiction of any federal district court in the United States. Therefore, the court construes those terms as reflecting a mutual waiver of any objections based on personal jurisdiction and/or *improper* venue. However, the Policies do not appear to preclude either party from seeking to litigate in an alternative jurisdiction for reasons other than lack of

13

Second, the Insurers have not shown that litigating in Tennessee would otherwise best serve the interest of the parties and the ultimate resolution of the parties' coverage dispute. The parties' underlying dispute concerns events and actions outside of Tennessee, including actions by EMPCo with respect to the ruptured pipeline, the effect of the pipeline shutdown on the Refinery in Arkansas, and Lion Oil's efforts at the Refinery to quantify and mitigate its losses. Lion Oil has presented evidence showing that several material party witnesses and non-party witnesses, who possess knowledge concerning Lion Oil's losses and mitigation efforts, are located in Arkansas. Caltagirone also avers that she is unaware of any third-party vendors or customers in Tennessee. Although the Insurers speculate that certain employees of Lion Oil and/or a Lion Oil affiliate may be located in Tennessee, they have not provided a meaningful explanation about the likely relevance of those witnesses, who, in any event, could likely be compelled to testify regardless of the forum. Moreover, unlike Lion Oil, the Insurers have not identified any non-party witnesses in Tennessee with potentially relevant information. Furthermore, to the extent that access to the Refinery is relevant, litigating in Arkansas will be more convenient for the parties' representatives and experts.

The court is not persuaded that the lack of an "international airport" in El Dorado favors litigating in this jurisdiction. None of the Insurers is a Tennessee or Arkansas resident. Furthermore, the Insurers have not identified any particular party witnesses or types of party witnesses they would likely produce in this litigation. This case presumably will turn on (1) the

---

personal jurisdiction and improper venue. Therefore, the court finds no basis to conclude that the Policies somehow precluded Lion Oil from seeking to litigate this case in Arkansas, notwithstanding its waiver of certain defenses. Indeed, the Policies specifically contemplated that Lion Oil could bring a lawsuit against the Insurers in any federal district court.

14

interpretation of coverage and exclusion provisions in the Policies, and (2) facts relating to actions that occurred in Louisiana and Arkansas – neither of which would seem to require testimony from a multitude of party representatives from insurance companies and/or their underwriters, in any case.[10] The court also observes that, aside from the fact that Nashville's airport bears the name "international" in its title, the Insurers have not shown what relevance that designation has to the relative burdens on the two parties.[11] Therefore, the court has no basis on which to conclude that it would be inequitable for the Insurers to litigate in Arkansas.

Finally, two of the Policies contain Arkansas choice-of-law provisions, and the Insurers have not addressed Lion Oil's contention that Arkansas substantive law likely will govern the remaining Policies. A federal court in Arkansas will be better positioned to apply Arkansas law.[12]

Under the circumstances, the court finds that the equities substantially favor trial of these issues in the Arkansas court. For these reasons, the court finds that deference to the Arkansas Coercive Action is warranted, notwithstanding the fact that the Insurers "raced to the courthouse"

---

[10]Furthermore, based on the allegations in the Complaint and their coordinated legal representation in this case, it appears that the Insurers handled the claim denial as a unit and are prepared to defend themselves as a unit.

[11]To the best of the court's knowledge, international flights to and from Nashville are limited to a handful of destinations within North America.

[12]The court does not make any choice-of-law findings in this opinion, nor does the court construe the Insurers as necessarily conceding that Arkansas law will apply to all of the Policies. The court merely observes that, as is relevant to the instant motions, the Insurers have given the court no reason to believe that the laws of any state other than Arkansas will likely apply to the underlying dispute.

15

to file this action before Lion Oil could react to the underlying claim denial.[13] Accordingly, the court will exercise its discretion to stay this case. Because the court will stay the case, the Motion to Transfer is moot.

## CONCLUSION

For the reasons stated herein, the Motion to Enjoin will be denied, the Request for Judicial Notice will be granted, the Motion to Transfer will be denied as moot, and this case will be stayed.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

---

[13]Even if the court had adopted the typical presumption in favor of the first-filed action (*i.e.*, in favor of this case), the court would have found that an exception to the first-to-file rule is warranted for the same reasons stated in this section.